**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICHARD PAUL SATORNINO,**

                **Plaintiff,**

**v.**                                          **Case No:  6:12-cv-1059-Orl-22GJK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**

_____

# REPORT AND RECOMMENDATION

      Richard Paul Satornino (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits.  Doc. No. 1.  Claimant maintains that the final decision of the Commissioner should be reversed and remanded because: 1) the Appeals Council erred by failing to state the weight given to the medical opinions of record and by depriving Claimant of due process when it denied Claimant's counsel's request to appear and present oral argument; and 2) the Administrative Law Judge (the "ALJ") erred by failing to include Dr. DeCubas's opinion that Claimant has moderate limitations in the ability to complete a normal workday and workweek without interruptions into the hypothetical question to the vocational expert (the "VE").  Doc. No. 20 at 7-15.  For the reasons set forth below, it is recommended that the Court **AFFIRM** the Commissioner's final decision.

## I.    <u>BACKGROUND.</u>

      Claimant was born on July 22, 1968, has a general education diploma ("GED"), and, as of July 19, 2011, was homeless.  R. 39, 46, 151.  Claimant has past-relevant work as a carpenter

helper, reinforced concrete builder, and as a dog groomer.  R. 60, 183.  On August 26, 2010,

Claimant filed applications for benefits, ultimately alleging an onset of disability as of March 31,

2010.  R. 38, 151-65.  Claimant alleges disability due to bipolar disorder, inability to concentrate,

drowsiness secondary to medications, head injury, headaches, arthritis, facial reconstruction

surgery, hearing loss, vision problems, heart problems, chest pain, and high cholesterol R. 44-45,

93, 101, 192, 199, 224.

## II.     ADMINISTRATIVE PROCEEDINGS.

Claimant's application was denied initially and upon reconsideration.  R. 86-97, 101-106.

Claimant requested a hearing before an ALJ and, on July 19, 2011, a hearing was held before

ALJ Mary C. Montanus.  R. 35-77.  Claimant and VE Dennis O'Connor were the only persons to

testify at the hearing.  R. 35-77.

At the hearing, the ALJ asked the VE whether an individual with the same age,

education, and work history as the Claimant, and who is limited to "a range of light work,"

including: "[l]ifting and carrying up to 20 pounds occasionally and 10 pounds frequently[;]

[s]tanding and walking can be done for six hours in the eight-hour period[;] [s]itting can be

[done] for six hours in an eight-hour period[;] [t]here could be no climbing ladders, ropes, or

scaffold or crawling[;] [o]only occasional stooping, crouching, climbing stairs, or overhead

work[;] [t]he individual should be limited to simple, one-to-three-step routine tasks with only

occasional change in the work setting[;] [p]eriods of concentration but should be limited to two

hours at a time before being allowed a regular work break[;] [t]here should be no high production

quotas; and [o]nly occasional interaction with coworkers and the general public" could perform

Claimant's past work or other work in that exists in the national economy.  R. 60-61. The VE

testified that such an individual could not perform Claimant's past work, but could perform other

work as a sorter, Dictionary of Occupational Titles (the "DOT") No. 789.687-146, a nut sorter,

DOT No. 521.687-086, a dowel inspector, DOT No. 669.687-014.  R. 61, 63-64.

On September 1, 2011, the ALJ issued a decision finding that the Claimant has not been

disabled from March 31, 2010, through the date of the decision. R. 16-29.  At step-two, the ALJ

determined that Claimant has the following severe impairments: degenerative joint disease of the

cervical spine, obesity, bipolar disorder, alcohol dependence, and history of cocaine abuse.  R.

18.  At step-three, the ALJ found that Claimant does not have an impairment or combination of

impairments that meets or medically equals listing level severity.  R. 19-21.

The ALJ determined that Claimant retains the residual functional capacity (the "RFC")

to:

> [P]erform a reduced range of light work. . . .  The claimant can
> never climb ladders, ropes, or scaffolds or crawl but can
> occasionally stoop, crouch, climb stairs, and perform overhead
> work.  The claimant is limited to simple, one-to-three-step, routine
> tasks with only occasional change in the work setting.  Periods of
> concentration are limited to two hours at a time and there can be no
> high production quotas.  The claimant can tolerate only occasional
> interactions with coworkers and the general public.

R. 21.  In explaining how the ALJ arrived at the above RFC assessment, the ALJ provided a

detailed review of the Claimant's allegations and testimony, medical record and opinion

evidence, including citations to the record.  R. 22-27.

With respect to the opinions of Dr. Mercedes DeCubas, Ph.D., a non-examining

psychologist who provided a mental RFC and psychiatric review technique (the "PRT") (R. 390-

406) based upon a records review, and other mental health opinions in the record, the ALJ states

the following:

> Mercedes DeCubas, Ph.D., State agency consultant, opined that the
> claimant is moderately limited in the ability to carry out detailed
> instructions and complete a normal workday and workweek
> without interruptions from psychologically-based symptoms and to

perform at a consistent pace without an unreasonable number and length of rest periods (Exhibit 8F/1-2). According to Dr. DeCubas, the claimant is able to understand, remember, and carry out simple instructions, focus and complete tasks when drug free, and has adequate social skills. (Exhibit 8F/3). Nancy Hineldey, Ph.D., State agency consultant, opined that the claimant does not have a severe mental impairment (Exhibit 4F/1). Robert Tango, Ph.D., who saw the claimant in vocational evaluation, opined that the claimant cannot return to work at his previous occupation, is not ready for direct job placement, will have issues regarding attendance or punctuality, and cannot deal with interpersonally stressful work (Exhibit 17E/1-6). Further, Dr. Tango opined that the claimant should focus on jobs that involve using body members, handtools, or special devices to work, move or carry light objects or material with little or no demand for precision (Exhibit 17E/6). On the other hand, Dr. Tango opined that the claimant has transferable skills, can stay on task, is currently employable in part-time work, jobs with a coach may be feasible in the long-term, and he will be able to endure/tolerate a full day of work with improvement (Exhibit 17E/1-7). Joseph Deluca, M.D. and Ph.D., who saw the claimant in evaluation requested by his representative, opined that the claimant's competency to manage own funds is poor, his prognosis is guarded, and he has significantly impaired social functioning, task persistence, concentration difficulties, and claimant has poor to no ability to follow work rules, relate to co-workers, deal with public, use judgment with the public, interact with supervisors, deal with work stresses, function independently, and maintain attention or concentration (Exhibit 14F/4). Further, Dr. DeLuca opined that he claimant has poor to no ability to understand, remember, and carry out simple job instructions, detailed (but complex) job instructions, and complex job instructions, as well as maintain personal appearances, behave in an emotionally stable manner, relate predictability in social situations, and demonstrate reliability (Exhibit 14F/5).

The [ALJ] gives greater weight to the opinion[ ] of Dr. DeCubas . . . because [she is an] expert in Social Security disability programs and [her opinion is] consistent with the generally normal mental status examinations contained through the record. While the [ALJ] accepts and relies upon Dr. DeLuca's mental status examination findings, the [ALJ] give little weight to his opinions of extreme functional limitations because they are not consistent with his examination findings (e.g. alert, oriented to all spheres, cooperative, attentive, normal psychomotor activity, speech, impulse control, and social judgment, and absence of concentration or memory deficits or mood lability), or those present in the

majority of the mental status examinations, which include cooperation, good concentration and good immediate, recent, and remote memory.  Further, it is noted that the claimant underwent examination with Dr. DeLuca, not in an attempt to seek treatment for symptoms, through attorney referral.  Although such evidence is certainly legitimate and deserves due consideration, in light of the significant contrasts between the normal mental status examination findings contained in his report and elsewhere, and the opinions of extreme functional limitations, the context in which it was produced cannot be entirely ignored.  The [ALJ] has also carefully considered Dr. Tango's findings and opinions as that of an independent examiner, but does not accord them great weight for several reasons.  The vocational evaluator opined that the claimant is not ready for direct job placement; will have issues regarding attendance or punctuality; and cannot deal with interpersonally stressful work.  He suggested the need for a job coach and part-time work, (Exhibit 17E/1-6).  The [ALJ] concludes that these limitations are not consistent with Dr. DeLuca's fairly contemporaneous mental status examination findings (e.g. cooperative behavior, no inattention, no mood lability, and normal psychomotor activity), or the mental status findings in the treatment record noted above.  Additionally, they are not consistent with the claimant's reported ability to move about the community, using a bicycle or public transportation, care for his disabled son and help out his mother.  There are some references to paranoid thought, but the claimant acknowledged that he is able to get along very well with this mother, and generally with his son.  Additionally, there is evidence that he has been cooperative on examination on several occasions in the mental health treatment record.  The [ALJ] acknowledges that the claimant has some limitations in focus and dealing with others, but gives little weight to Dr. Tango's conclusions that the claimant is not able to perform full time work, maintain attendance, or requires a job coach.

R. 25-26.  Thus, the ALJ described Dr. DeCubas's opinions, including that the Claimant is moderately limited in the ability to carry out detailed instructions and complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but Claimant is able to understand, remember, and carry out simple instructions, focus and complete

tasks when drug free, and has adequate social skills.  R. 25.  The ALJ gave greater weight to Dr.

DeCubas's opinions than to the opinions of Drs. DeLuca and Tango.  R. 26.

The ALJ "incorporated and implicitly included [those] findings regarding the degree of

functional limitations . . . into the mental work-related limitations of the [RFC]."  R. 26.  More

specifically, the ALJ states:

> The [ALJ] has found that the claimant has moderate limitation
> under the broad area of concentration, persistence, or pace. . . .
> When determining the appropriate limitations to include in the
> mental [RFC] to reflect this degree of severity in the broad area of
> concentration, persistence or pace, the [ALJ] has included specific
> limitations in task complexity.  The [ALJ] has restricted the
> claimant to simple tasks, one-to-three step tasks, as simple on-to-
> three step tasks do not require the degree of concentration or
> persistence required of more detailed or complex tasks.  The [ALJ]
> has also included a limitation to routine tasks and only occasional
> change in the work setting due to the deficits noted in the record
> that would also tend to interfere with concentration and
> persistence.  Tasks that are routine and do not involve more than
> occasional change in the work-place would require less
> concentration and persistence than tasks that vary significantly
> during the work day or work situations that change frequently.
> Likewise, the [ALJ] has included a limitation that periods of
> concentration are limited to two hours at a time.  Regarding pace,
> the [ALJ] has included a limitation that there be no high
> production quotas based on the findings of slowed cognition.

R. 27.  Thus, the ALJ explains that she incorporated and implicitly included the degree of

limitations the ALJ found with respect to Claimant's moderate limitations in concentration,

persistence, or pace into specific limitations in the RFC, which the ALJ then describes in detail.

R. 26-27.

In the decision, the ALJ makes no findings at step-four, whether the Claimant can

perform his past relevant work and, instead, moves directly to the step-five.  R. 27-28.  At step-

five, based upon the testimony of the VE, the ALJ determined that Claimant retains the ability to

perform work as a sorter, nut sorter, and dowel inspection.   R. 28.  Therefore, the ALJ concludes that Claimant is not disabled.  R. 28-29.

Claimant requested review of the ALJ's decision from the Appeals Council.   R. 11. Claimant included a memorandum of alleged errors within his request for review, which contains an allegation that the ALJ erred by giving greater weight to Dr. DeCubas's opinion, but failed to include a moderate limitation in the ability to complete a normal workday and workweek without interruptions in the RFC.   R. 280-81.   On April 26, 2012, the Appeals Council granted Claimant's request for review stating that the ALJ erred by failing to include a finding at step-four as to whether or not Claimant can perform his past-relevant work.  R. 145-49.  The Appeals Council stated that "[w]e plan to issue an unfavorable decision that modifies the basis for the decision of the [ALJ].  Specifically, we plan to find that you cannot perform any past relevant work, but that there are a significant number of jobs in the national economy that you could perform and therefore, you are not disabled. . . ."  R. 146.   The Appeals Council further stated that it "is prepared to adopt the findings of the [ALJ] at steps 1, 2, 3, and 5 of the sequential evaluation process," including the ALJ's findings with respect to the Claimant's RFC.  R. 146.

The Appeals Council notified Claimant that he may request an appearance before the Appeals Council, and if there is an important question of law or policy, or if oral argument would help it reach a proper decision, the Appeals Council would grant such a request.  R. 148. On May 4, 2012, Claimant requested an appearance before the Appeals Council stating:

> It is the responsibility of the [ALJ] to hear the testimony and make findings of fact and law.  In this case, the Appeals Council wishes to act as an [ALJ].  Therefore, [Claimant] requests an appearance. . . . He is entitled to due process and oral argument would help the Appeals Council reach a proper decision.  Additionally, there are important questions of law involved in [Claimant's] case.  The proposed Appeals Council decision still fails to address all of the

> arguments that were originally submitted [in Claimant's request for review]."

R. 283.  Thus, Claimant requested oral argument before the Appeals on the bases of due process, to address important, but unspecified questions of law, and to address the arguments raised in Claimant's request for review.  R. 283.

On June 26, 2012, the Appeals Council issued a decision without holding oral argument. R. 4-7.  The decision acknowledges that Claimant requested oral argument, but states that the "Council has determined that there is not an important question of law or policy, and that oral argument is not needed to reach a proper decision."  R. 4.  Therefore, the Appeals Council denied Claimant's request for oral argument.  R. 4.

The body of the decision provides that:

> The Appeals Council agrees with the [ALJ's] findings under steps 1, 2, 3, and 5 of the sequential evaluation; namely, that the claimant has not engaged in substantial gainful activity since March 31, 201[0], the amended onset date; the claimant has the severe impairments of degenerative joint disease of the cervical spine, obesity, bipolar disorder, alcohol dependence, and history of cocaine abuse; and these impairments do not meet or medically equal one of the listed impairments . . .; and that there are a significant number of jobs the claimant is capable of performing. . . .

> For reasons set forth in [the ALJ's decision], the Appeals Council adopts the [ALJ's RFC] finding that the claimant can perform a reduced range of light work. . . .  The claimant can never climb ladders, ropes, or scaffolds or crawl but can occasionally stoop, crouch, climb stairs, and perform overhead work.  The claimant is limited to simple, one-to three—step, routine tasks with only occasional changes in the work setting.  Periods of concentration are limited to two hours at a time and there can be no high production quotas.  The claimant can tolerate only occasional interactions with coworkers and the general public.

R. 4-5.  Thus, the Appeals Council explicitly adopted the ALJ's findings with respect to steps one, two, three, and five, and the ALJ's findings with respect to the RFC.  R. 4-5.

The Appeals Council then found, at step-four, that the Claimant cannot perform his past relevant work.  R. 5.  Based upon the hypothetical question posed to the VE and his response thereto, the Appeals Council found, at step-five, that Claimant can perform other work which exists and, therefore, is not disabled.  R. 5-6.  On July 10, 2012, the Claimant appealed the Commissioner's final decision to the District Court.  Doc. No. 1.

## III.   LEGAL STANDARDS.

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. See 20 CFR §§ 404.1520(a), 416.920(a).  In Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## B.  THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

IV.     **ANALYSIS.**

      **A. The Appeals Council.**

      **1. Medical Opinions.**

Claimant argues that the Appeals Council erred by failing to state with particularity the weight it gave to the medical opinions of record and the reasons therefor.  Doc. No. 20 at 7-9 (citing *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011)). Claimant contends that because the Appeals Council issued the final decision in this case, 20 CFR § 404.1527(e)(3) requires that it follow the "'same rules for considering opinion evidence as [ALJs] follow.'"  Doc. No. 20 at 7-8.[1]  Claimant maintains that while the ALJ stated with particularity the weight given to the various medical opinions, the Appeals Council "did not adopt these findings."  Doc. No. 20 at 8.

The Commissioner asserts that the Appeals Council adopted all of the ALJ's findings and supplemented its own finding at step-four of the sequential evaluation process.  Doc. No. 21 at 8-9.  Thus, the Commissioner argues that the final decision in this case is the ALJ's decision, which has been supplemented by the order of the Appeals Council.  *Id.*  The Commissioner also contends that the Appeals Council specifically adopted all of the ALJ's findings with respect to the RFC and, because those findings include the weight given to the medical opinions, the Appeals Council complied with 20 CFR § 404.1527(e)(3).  Doc. No. 21 at 9.

The Appeals Council specifically adopted the ALJ's "evidentiary facts" and findings at steps one, two, three, and five, as well as the ALJ's findings with respect to the Claimant's RFC, and then supplemented its own findings only at step-four of the sequential evaluation process.  R. 4-7.  The Appeals Council's action of adopting and then supplementing the ALJ's decision is

---

[1] The Claimant and the Commissioner cite to 20 CFR § 404.1527(f)(3).  However, as of February 23, 2012, the correct citation to that regulation is Section 404.1527(e)(3).  *See* 77 FR 10651-01 (2012).

appropriate. *See Davis v. Astrue*, Case No. 8:11-cv-2398-T-TGW, 2012 WL 6213124 at *3 (M.D. Fla. Dec. 13, 2012) (stating the final decision of the Commissioner is the decision of the Appeals Council as supplemented by those portions of the ALJ's decision, which it adopted); *Zilahy v. Astrue*, Case No. 3:11-cv-206-J-JRK, 2012 WL 4207381 at *11 (M.D. Fla. Sept. 19, 2012) (Appeals Council did not err by failing to make credibility determination because it adopted the ALJ's findings regarding evidentiary facts). Therefore, although the Appeals Council did not independently state the weight given to the medical opinions of record, because it adopted the ALJ's findings as to evidentiary facts and the RFC, wherein the ALJ stated the weight given to the medical opinions, the Appeals Council complied with 20 CFR § 404.1527(e)(3). Accordingly, it is recommended that the Court reject this argument.

### 2. Due Process.

Claimant argues that the Appeals Council erred when it denied his request for oral argument before issuing its decision. Doc. No. 20 at 9-11 (citing *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000); *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews*, 424 U.S. at 333. In this case, although the Appeals Council denied Claimant's request for oral argument before it, the Claimant was provided an opportunity to be heard in a meaningful manner at the hearing before the ALJ and in his brief to the Appeals Council. R. 35-77, 279-82. The Appeals Council adopted all of the ALJ's factual and legal findings, but supplemented its own findings at step-four, that Claimant cannot return to any past-relevant work, which corresponds to the testimony of the VE at the hearing before the ALJ. R. 5-6, 59-61.

In *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997), the Eleventh Circuit held that "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Id*.  In this case, Claimant has failed to demonstrate any prejudice Claimant has suffered by being denied a second opportunity for oral argument and has failed to point to any statute, regulation, or rule which the Appeals Council violated by denying his request for oral argument.   Accordingly, it is recommended that the Court reject this argument.

**B.  Section I Mental RFC Findings.**

Claimant argues that that the ALJ erred by failing to include Dr. DeCubas's finding of moderate limitation in the ability to complete a normal workday and workweek without interruptions, which are contained in Section I of Dr. DeCubas's mental RFC, in the ALJ's hypothetical question to the VE.  Doc. No. 20 at 12-15.  Because the ALJ gave greater weight to Dr. DeCubas's ultimate opinion, the Claimant contends that ALJ's failure to include her Section I findings in the hypothetical question is a significant error.  Doc. No. 20 at 12, 14 (citing *Conyers v. Commissioner of Social Security*, Case No. 6:11-cv-701-Orl-37DAB, Doc. No. 13 (M.D. Fla. Jun. 22, 2012)).   The Commissioner maintains that the ALJ did not err because the Section I findings are only a summary of findings and the doctor's ultimate opinion is contained in a separate portion of the mental RFC assessment, which the ALJ specifically discussed and gave greater weight.   Doc. No. 21 at 12-14 (citing Program Operations Manual System ("POMS") DI 24510.060(B)(2)(a) ("Section I is merely a worksheet aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."); *Maffia v. Astrue*, 2010 WL 3893711 at *6 (M.D. Fla. Sept. 29, 2010)).

The ALJ stated the following with respect to Dr. DeCubas's opinion:

> Mercedes DeCubas, Ph.D., State agency consultant, opined that the claimant is moderately limited in the ability to carry out detailed instructions and complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Exhibit 8F/1-2).  According to Dr. DeCubas, the claimant is able to understand, remember, and carry out simple instructions, focus and complete tasks when drug free, and has adequate social skills. (Exhibit 8F/3). . . .

R. 25.  The ALJ's first sentence above describes Dr. DeCubas's Section I findings in her mental RFC.  *Compare* R. 25 *with* R. 390-91.  The ALJ's second sentence above summarizes Dr. DeCubas's ultimate opinion in Section III of her mental RFC.  *Compare* R. 25 *with* R. 392.  The ALJ gave greater weight to Dr. DeCubas's ultimate opinion.  R. 26.  As set forth above (*see* p. 6), the ALJ then provides a detailed explanation of how the ALJ's factual findings, *i.e.*, giving greater weight to Dr. DeCubas's opinion, among others, translate into the specific limitations contained in the RFC, which reflect the severity of those limitations.  R. 27.

In *Jones v. Commissioner of Social Security*, 478 Fed.Appx. 610, 612-13 (11th Cir. June 1, 2012) (unpublished), the Eleventh Circuit considered and rejected a similar argument regarding Section I findings.  *Id.*[2]  In *Jones*, 478 Fed.Appx. at 612, the claimant argued that the ALJ's RFC, which found that he could perform and carry out simple and repetitive instructions and tasks on a sustained basis was not supported by substantial evidence because two evaluating doctors checked a box on their mental RFC assessments indicating that he was moderately limited in the ability to complete a normal workday or workweek without interruptions and perform at a consistent pace without an unreasonable number and length of rest periods.  *Id.* The Eleventh Circuit stated:

> This argument is also unavailing because it does not consider "*all* of the relevant medical and other evidence" that was before the ALJ.  The Social Security Administration's Programs Operations

---

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

Manual System (POMS) clarifies that the boxes checked by Dr. Zelenka and Dr. Bee are only part of a worksheet that "does not constitute the [doctors' actual] RFC assessment." Checking the box "Moderately Limited" means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation. After checking the boxes as an "aid," a doctor is then required to detail his actual RFC assessment. *Id.*

Consistent with these directives, both Dr. Zelenka and Dr. Bee, after checking the various boxes, elaborated on their opinions regarding Jones's ability to concentrate. Dr. Zelenka explained that Jones has "occasional" problems with his attention span, but that he otherwise "retains adequate mental ability to carry out simple instr[uctions] and to relate adequately to others in a routine work setting." Similarly, Dr. Bee stated that Jones "may" have "occasional lapses in concentration and efficiency," but that he otherwise "appears mentally capable of well structured task activity." These opinions tend to support the ALJ's finding.

. . . .

At this juncture, it bears repeating that "[w]e may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." Rather, the question that we must answer is whether there is "more than a scintilla" of evidence such that "a reasonable person would accept [it] as adequate to support [the ALJ's] conclusion." Because the answer is yes, the Commissioner's decision must be affirmed.

*Id.* (emphasis in original) (internal citations omitted). Thus, the Eleventh Circuit indicated that checking a box in Section I of an RFC assessment form indicating the claimant is moderately limited does not constitute the doctor's actual RFC assessment and is merely an aid that requires the doctor to "detail his actual RFC assessment." *Id.*

As set forth above, the ALJ discussed Dr. DeCubas's findings in Section I and her ultimate opinion in Section III, gave greater weight to her opinion, and the ALJ explained how she accounted for those findings in the RFC. R. 21, 25-27. Finding *Jones* persuasive, the undersigned concludes that the ALJ did not err by failing to include Dr. DeCubas's Section I

findings into the hypothetical question to the VE.[3]   Accordingly, it is recommended that the
Court reject this argument.

V.     **CONCLUSION**.

    For the reasons stated above, it is **RECOMMENDED** that:

1.    The final decision of the Commissioner be **AFFIRMED**; and

2.    The Clerk be directed to enter judgment in favor of the Commissioner and to close the case.

    Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

    **RECOMMENDED** in Orlando, Florida on April 10, 2013.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard Culbertson, Esq.
3200 Corrine Drive, Suite E
Orlando, Florida 32803

John F. Rudy, III
Suite 3200
400 N Tampa St

---

[3] In *Conyers v. Commissioner of Social Security*, Case No. 6:11-cv-701-Orl-37DAB, Doc. No. 19 at 12 (M.D. Fla. May 24, 2012), Magistrate Judge David A. Baker recommended that the District Court reverse the final decision of the Commissioner in part because the ALJ failed to include Section I findings of a moderate limitation in the ability to complete a normal workday and workweek without interruptions in the hypothetical question to the VE. *Id.* Magistrate Judge Baker's report and recommendation was adopted without objection on June 22, 2012 by the District Court. Doc. No. 21. *Jones*, 478 Fed.Appx. at 612-13, was issued on June 1, 2012, and , therefore, Magistrate Judge Baker did not have the benefit of *Jones* prior to issuing the report and recommendation in *Conyers*. Accordingly, the undersigned finds *Jones* more persuasive.

Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Mary C. Montanus
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801